**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**STATE AUTO PROPERTY
CASUALTY INSURANCE COMPANY**                                                                   **PLAINTIFF**

**vs.**                                                           **CIVIL ACTION NO.: 3:15-CV-122-HTW-LRA**

**EL SHADDAI CHRISTIAN
MINISTRIES, INC.**                                                                                      **DEFENDANT**

*CONSOLIDATED WITH*

**EL SHADDAI CHRISTIAN
MINISTRIES, INC.**                                                                                       **PLAINTIFF**

**vs.**                                                           **CIVIL ACTION NO.: 3:15-CV-229-TSL-RHW**

**STATE AUTO PROPERTY
CASUALTY INSURANCE COMPANY**                                                                **DEFENDANTS**

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

BEFORE THIS COURT is State Auto Property and Casualty Company's (hereinafter referred to as "State Auto") Motion for Summary Judgment. **[Docket no. 92]**. The consolidated lawsuits *sub judice* present the interrogatory whether the insurance policy (hereinafter referred to as the "Policy") purchased by El Shaddai Christian Ministries, Inc., (hereinafter referred to as "El Shaddai") from State Auto, provides coverage for storm water damage to the roof of El Shaddai's church building, located at 3120 Robinson Street, Jackson, Mississippi (hereinafter referred to as the "Subject Property").

State Auto's motion for summary judgment is premised on Rule 56 of the Federal Rules of Civil Procedure[1]. By its motion, State Auto asks this court to grant summary judgment in its

---

[1] (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or

1

favor and to dismiss the claims of El Shaddai against it. State Auto's argument is that the damage to the roof of the Subject Property was not due to a storm event, but caused by a long-term lack of maintenance and neglect. This court is not persuaded to grant State Auto's motion under the jurisprudence of Rule 56, and will DENY its motion for summary judgment. **[Docket no. 92]**.

## I.   JURISDICTION

This court first must determine whether it has subject matter jurisdiction. The complaint filed by State Farm alleges that this court possesses federal subject matter jurisdiction by way of diversity jurisdiction as codified under 28 U.S.C. § 1332[2]. [Docket no. 1, ¶ 5]. The parties to this matter are: State Auto which is an insurance company organized under the laws of the State of Iowa, with its principle place of business in the State of Ohio; and El Shaddai, a non-profit

---

denying the motion.
(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.
(c) Procedures.
  (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
  (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
  (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
  (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.
Fed. R. Civ. P. 56

[2] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
  (1) citizens of different States;
28 U.S.C.A. § 1332 (West).

corporation incorporated in the State of Mississippi with its principle place of business in the State of Mississippi [Docket no. 1, ¶¶2-3].

The consolidated case (state civil action number 25CI1:15-cv-148-JAW), which was originally filed in the Circuit Court of Hinds County, Mississippi, named Boyles Moak & Stone, Inc. (hereinafter referred to as "Boyles"), as a second defendant. Boyles is a corporation doing business in the State of Mississippi. [3:15-CV-229-HTW-LRA, Docket no. 1-1, PP. 3-4]. El Shaddai filed its state court lawsuit on March 16, 2015. [3:15-CV-229-HTW-LRA, Docket no. 1-1](hereinafter referred to as "state lawsuit").

On March 26, 2015, State Farm filed a notice of removal with this federal forum alleging Boyles had "been fraudulently and/or improperly joined in this action solely for the purpose of defeating diversity of citizenship jurisdiction in this matter." [3:15-CV-229-HTW-LRA, Docket no. 1]. Neither Boyles nor El Shaddai moved the federal court to remand the state lawsuit to Hinds County Circuit Court; instead, on April 14, 2015, United States District Court Judge Tom S. Lee entered an order dismissing Boyles by the agreement of the parties. In this court's eye, that agreement of the parties to dismiss Boyles was akin to an admission of fraudulent joinder of Boyles, which would have resulted in this court dismissing Boyles from this action. That same day, on April 14, 2015, that case was consolidated with case number 3:15-CV-112-HTW-LRA, the lead case in this consolidated action (hereinafter referred to as the "lead case").

This court alternatively finds that District Court Judge Lee could have remanded 3:15-CV-229-HTW-LRA if persuaded the El Shaddai has a viable claim against Boyles. On removal questions, the federal court takes a snapshot of the pleadings at the time of removal.[3] Then, 3:15-CV-229-HTW-LRA would not have featured diverse parties, as El Shaddai and Boyles are both

---

[3] "The focus is on plaintiff's pleadings at the time of removal;"
Andrews v. Miss. Farm Bureau Cas. Ins. Co., 187 F. Supp. 3d 749, 758 n.7 (S.D. Miss. 2016).

Mississippi citizens. Still, has the court remanded the matter, the defendant therein, State Auto, simply would have removed again and the court would have lost time, a wasteful exercise.

Further, the United States Supreme Court, in facing situations somewhat similar to that facing this court, has found, "[where the] jurisdictional defect was cured, i.e., complete diversity was established before the trial commenced[,]" "'the District Court [had] jurisdiction of the parties at the time it entered judgment.'" *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73, 117 S. Ct. 467, 475, 136 L. Ed. 2d 437 (1996)(*Quoting Grubbs v. General Elec. Credit Corp.*, 405 U.S. 669, 700, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972)). Therefore, this court is not convinced it would be an efficient use of judicial resources to sever and remand the state case because the jurisdictional defect has been corrected.

As to the jurisdictional amount: "[t]he amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *Webb v. Investacorp., Inc.*, 89 F.3d 252, 256 (5th Cir. 1996). El Shaddai does not challenge the amount in controversy as set forth in State Farm's Complaint – that alleged amount being $658,000.00. In fact, in filing its own complaint, El Shaddai requested punitive damages as well as compensatory damages. [3:15-cv-229-TSL-RHW, Docket no. 1-1, P. 8]. Therefore, this court, which had an independent obligation to confirm its subject matter jurisdiction[4], finds the mandates of 28 U.S.C. § 1332 are satisfied: the parties are completely diverse and the amount in controversy is satisfied.

---

[4] Federal courts are obliged to examine the basis for the exercise of federal subject-matter jurisdiction. *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999). A federal district court may examine its subject-matter jurisdiction over a matter, *sua sponte*, at any time. *Giles v. Nylcare Health Plans, Inc*., 172 F.3d 332, 336 (5th Cir. 1999) (a court must raise the issue *sua sponte* if it discovers that it lacks subject matter jurisdiction); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2007). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added).
*Dean v. Mozingo*, 521 F. Supp. 2d 541, 551 (S.D. Miss. 2007)(overturned on other grounds).

Inasmuch as this court is exercising diversity of citizenship subject-matter jurisdiction, this court, sitting in Mississippi, will apply Mississippi's law to the substantive issues in accordance with the *Erie* Doctrine. *Erie v. Tompkins*, 304 U.S. 64, 78-79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under the *Erie* Doctrine, federal courts sitting in diversity must apply state substantive law and federal procedural law. *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (*citing Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 426-427 (1996)).

## II.   STATEMENT OF THE FACTS

### A. *Undisputed Facts*

El Shaddai purchased the Subject Property on September 23, 2003. [Docket no. 92-1]. On March 18, 2009, Gail Kayiwa (hereinafter referred to as "Kayiwa"), the president of El Shaddai, reported a roof leak due to storm damage to Brotherhood Mutual Insurance Company (hereinafter referred to as "Brotherhood") and filed a claim for such. [Docket no. 92-2]. Brotherhood retained an independent adjuster, Central Adjustment Company (hereinafter referred to as "Central"), to inspect the premises and survey the damage. [Docket no. 92-3]. Central visited the Subject Property on April 13, 2009, and prepared a report, including photographs which purport to show water pooling on the Subject Property's roof. [Docket no. 92-3].

Brotherhood denied the claim on April 29, 2009, by sending a letter to El Shaddai explaining: there was no storm damage to the roof; the roof was "worn out and in need of maintenance"; and the Brotherhood policy excluded damage due to wear and tear. [Docket no. 92-4]. Brotherhood cancelled its policy approximately eight (8) months later, claiming that El Shaddai had failed to pay the premiums. [Docket no. 92-5].

Kayiwa thereafter sought replacement insurance coverage for the Subject Property. She looked to State Auto. On March 5, 2012, El Shaddai signed a new Business Owners Application for insurance with State Auto. [Docket no. 92-6]. Kayiwa backdated a check issued to State Auto, which purported to be issued on March 2, 2012. [Docket no. 92-7, P. 21, LL. 9-19]. State Auto issued the Policy, numbered BOP 2666518 on March 6, 2012 with a policy period of March 2, 2012 through March 2, 2013. [Docket nos. 91-8 & 91-9].

On July 16, 2012, roughly a period slightly over four (4) months after State Auto had issued the policy, El Shaddai filed a claim with State Auto for a roof leak and water intrusion which it claimed had occurred as a result of a sudden storm event on March 2, 2012, the date the Policy became effective, and three days before Kayiwa signed the insurance application. [Docket no. 92-10]. State Auto inspected the property on July 19, 2012. [Docket no. 92-11]. State Auto denied the claim on July 23, 2012, stating there was no evidence of storm damage, but, rather the roof presented long-existing maintenance issues. [Docket no. 92-12].

El Shaddai reported the same claim a second time on October 5, 2012. [Docket no. 92-13]. State Auto retained an independent adjuster, Cunningham Lindsey (hereinafter referred to as "Lindsey") on October 11, 2012, to inspect the property. [Docket no. 92-14]. Lindsey found the same maintenance issues Central had found three (3) years prior. [Docket no. 92-14]. After receiving Lindsey's report, State Auto denied the second claim filed by El Shaddai with State Auto on October 18, 2012. [Docket no. 92-15].

State Auto terminated the policy on October 19, 2012, as a result of non-payment of premiums by El Shaddai. [Docket no. 92-16]. Sammuel Honnold (hereinafter referred to as "Honnold"), a roofing contractor, examined the Subject Property on January 17-18, 2013, at the direction of El Shaddai. [Docket no. 92-17]. Honnold contacted State Auto and informed it he

believed the damage to the roof was due to settling as the result of a sinkhole. [Docket no. 92-17]; however, El Shaddai does not intend to, nor can it, rely on the opinion of Honnold as to the sinkhole issue. This is so because El Shaddai offered Honnold solely as an expert in the field of roofing, not engineering.

State Farm opened a third claim based on the March 2, 2012, sudden storm event and inspected the property again in February, 2013. [Docket no. 92-18]. State Auto then retained an engineer, Lawrence Wedderstand (hereinafter referred to as "Wedderstrand") who inspected the property yet again on September 25, 2015. [Docket no. 92-20]. Wedderstrand issued a report which indicated:

1. The church was not damaged as a result of a storm event, which occurred on March 2, 2012.
2. The moisture intrusion into the interior of the church was a result of long-term exposure of the roof covering to ponded water, which caused degradation of the roof system and the degradation allowed the ponded rainwater to breach the building envelope.
3. The ponded water on the roof was a result of insufficient slope of the roof system toward the north end of the structure, and was exacerbated by the raised leg of the mansard system, which extended above the roof surface along the north end of the building.

[Docket no. 92-20]. As a result of the findings of Wedderstrand, State Auto again denied the claim of El Shaddai. [Docket no. 92-21].

### B. Disputed Facts

El Shaddai claims, "[w]hile there had been prior problems with leaks, water had never poured through the ceiling." [Docket no. 112, P. 3]. El Shaddai further maintains it told State Farm about the prior leaks with the building [Docket no. 112-2, PP. 25-27], a fact which State Auto challenges. [Docket no. 92, P. 3, fn. 1]. El Shaddai claims it informed State Farm about the Brotherhood claim and its denial, a fact which is hotly contested by State Auto. [Docket nos. 92-8 & 92-9].

### C. Expert Witness' Undisputed Facts

The experts propounded by the parties are in agreement on some basic facts underlying the cause of the damage to the Subject Property. Wedderstrand for State Farm and Honnold for El Shaddai both agree that the negative slope of the roof allowed ponding on the north end of the structure which was exacerbated by the raised leg of the mansard system[5]. [Docket nos. 92-20, and 102-3]. Further, they agree that ponding water, generally, can be expected to accelerate deterioration of the roof's bitumen system[6]. [Docket nos. 92-20, and 102-3].

### D. Expert Witness' Disputed Facts

The experts disagree on some fundamental grounds. Honnold's opinion states the ponding was not the result of a faulty design or inadequate maintenance but, rather was the result of a sudden storm event on March 2, 2012. [Docket no. 102-3]. He further stated that when he inspected the roof, it was in good condition and had been well maintained. [Docket no. 102-3].

Wedderstrand contends however, that the church was not well maintained. [Docket no. 92-20]. Wedderstrand further contends that the damage to the roof was a long outstanding problem, not the result of the storm on March 2, 2012. [Docket no. 92-20]. Wedderstrand further issued a Supplemental Report of Findings in which he reviewed Honnold's report and disagreed with him on multiple points. [Docket no. 94-8]. Wedderstrand states in that supplemental report that the ponding "was a direct result of long-term movement of the supporting soils." [Docket no. 94-8, P. 5, ¶ 8].

Finally, although neither party has addressed, either in support or opposition to the instant motion for summary judgment, the report of Michael E, Brown, PhD (hereinafter referred to as

---

[5] A mansard or mansard roof (also called a French roof or curb roof) is a four-sided gambrel-style hip roof characterized by two slopes on each of its sides with the lower slope, punctured by dormer windows, at a steeper angle than the upper.

[6] This type of roofing is an evolution of asphalt roofing. It is made from asphalt and a variety of rubber modifiers and solvents. There are several ways of connecting pieces of this material.

"Brown"), this court takes notice that El Shaddai has offered Brown as an expert witness, and therefore, this court may consider his report. Brown specifically states: "[g]iven the radar data, local storm reports, warning data and observational data, it is more probable than not that the church location experienced wind gusts near 60mph accompanied by a brief period of very heavy rainfall." [Docket no. 102-4, P. 3]. This is in direct contravention of Wedderstrand's report which states the church was not subjected to weather related damage due to high winds. [Docket no. 92-20].

### III.    STANDARD OF REVIEW

In deciding a motion for summary judgment, this court must consider the dictates of Rule 56 of the Federal Rules of Civil Procedure.[7]

> [T]his court should grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007). A fact is material if "it might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether a genuine dispute exists as to any material fact, the court must consider "all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence." *Turner*, 476 F.3d at 343 (*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). While the court must make all reasonable inferences in favor of the non-moving party, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097 (*citing Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir.1994)).

*Cruz v. Mississippi Dep't of Human Servs*., 9 F. Supp. 3d 668, 679 (S.D. Miss. 2014).

---

[7] (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
Fed. R. Civ. P. 56

9

Once the movant has satisfied its initial burden, the burden shifts to the non-movant to produce evidence indicating the existence of a genuine issue of material fact for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The non-movant is not entitled to rely solely on his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

### IV. CONCLUSION

As enumerated *supra*, this court finds there are multiple "disputed issues of material fact" To grant summary judgment under this scenario would be contrary to the dictates of Rule 56, which to test whether the movant is entitled to a judgment under the applicable law and undisputed, material facts. The material facts here are far from undisputed. This litigation must be resolved by a finder of fact. Therefore, this court DENIES State Auto Property and Casualty Company's (hereinafter referred to as "State Auto") Motion for Summary Judgment. **[Docket no. 92]**.

The court sets this litigation for a pretrial conference on June 6, 2017, at 9:00 a.m. in Courtroom 6A of the United States District Courthouse in Jackson, Mississippi.

The court further sets this litigation for jury trial term beginning the week of June 19, 2017, at 9:00 a.m.

**SO ORDERED this the 29th day of March, 2017.**

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**